UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-60663-CIV-ALTMAN/Hunt

**ALEGRA ORENSTEIN**,

    *Plaintiff*,

v.

**BURLINGTON STORES, INC.**,

    *Defendant*.

_____/

## ORDER

Before the Hon. Roy K. Altman:

The Plaintiff, Alegra Orenstein ("Orenstein"), sued the Defendant, Burlington Stores, Inc. ("Burlington"), in state court after she slipped and fell in a Burlington store. *See* Complaint [ECF No. 1-2]. Burlington timely removed the case by invoking this Court's diversity jurisdiction. *See* Notice of Removal ("Notice") [ECF No. 1]. In her Motion to Remand, Orenstein challenges this Court's jurisdiction and argues that the Defendant has failed to satisfy the amount-in-controversy requirement. *See* Motion to Remand (the "Motion") [ECF No. 11]. For the reasons set out below, the Motion is **GRANTED**.

## THE LAW

It is the Court's responsibility to "zealously insure that jurisdiction exists over a case." *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001). A federal court should, therefore, remand to state court any case that has been improperly removed. *See* 8 U.S.C. § 1447(c). "Not only does the language of the Act of 1887 evidence the Congressional purpose to restrict the jurisdiction of the federal courts on removal, but the policy of the successive acts of Congress

regulating the jurisdiction of federal courts is one calling for the strict construction of such legislation." *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941). Indeed, "[d]ue regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined." *Healy v. Ratta*, 292 U.S. 263, 270 (1934). "Defendant's right to remove and plaintiff's right to choose his forum are not on equal footing; for example, unlike the rules applied when plaintiff has filed suit in federal court with a claim that, on its face, satisfies the jurisdictional amount, removal statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).

District courts have original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between" the citizens of one state and the citizens or subjects of a different state. *See* 28 U.S.C. § 1332(a). The party invoking federal jurisdiction must establish that the amount in controversy exceeds $75,000. *See id.*; *cf. McNutt v. Gen. Motors Acceptance Corp. of Ind., Inc.*, 298 U.S. 178, 189 (1936). If left unchallenged, a removing defendant, "as specified in § 1446(a)[,] . . . need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). But, once challenged, "a conclusory allegation that the amount in controversy requirement is satisfied [is] insufficient to sustain jurisdiction." *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1273 (11th Cir. 2000). "[W]here jurisdiction is based on a claim for indeterminate damages, the . . . party seeking to invoke federal jurisdiction bears the burden of proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional minimum." *Federated Mut. Ins.*

*Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003); *see also Dart Cherokee Basin*, 574 U.S. at 88.

The amount in controversy is determined by "how much is in controversy at the time of removal, not later." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 751 (11th Cir. 2010). While evidence acquired after removal may be used to establish the amount in controversy "at the time of removal," *Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 946 (11th Cir. 2000) (holding that a court may consider evidence submitted after the removal petition is filed, "but only to establish the facts present at the time of removal"), a "court should not reserve ruling on a motion to remand in order to allow the defendant to discover the potential factual basis of jurisdiction. Such fishing expeditions would clog the federal judicial machinery, frustrating the limited nature of federal jurisdiction by encouraging defendants to remove, at best, prematurely, and at worst, in cases in which they will never be able to establish jurisdiction." *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1217 (11th Cir. 2007).

Finally, "[a]ll doubts about the propriety of removal should be resolved in favor of remand." *King v. Gov't Emps. Ins. Co.*, 579 F. App'x 796, 800 (11th Cir. 2014); *Univ of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) ("[A]ll doubts about jurisdiction should be resolved in favor of remand").

## ANALYSIS

### I. The Parties' Positions

In its Notice of Removal, Burlington invoked this Court's diversity jurisdiction. *See* Notice ¶ 3. On the amount-in-controversy requirement, Burlington advanced two arguments. *First*, it said that, in her pre-suit demand letter, Orenstein demanded "many times in excess of the $75,000.00 amount in controversy required for diversity jurisdiction." Notice ¶ 4. *Second*, it relied on

inferences it drew from "the Plaintiff's medical bills provided to Defendant prior to suit." *Id.* ¶ 7.

In her Motion, Orenstein parries both arguments. With respect to the first, she contends that the "pre-suit demand letter should not be considered to satisfy the amount in controversy." Mot. [ECF No. 11] at 5. As for the second, she claims that, as of the date of her Motion, her medical bills totaled only $11,586.35. *See id.* at 6.

In response, Burlington countered that the demand letter's supporting documentation (i.e. medical records and bills), together with the Complaint's broad damages claim—which includes "pain and suffering, disability, inconvenience, scarring and disfigurement, mental anguish, loss of capacity for the enjoyment of life, lost wages, [and] the loss of future earning capacity"—are sufficient to establish the amount-in-controversy requirement. Resp. ¶ 7.

## II. The Motion

Settlement offers "do not automatically establish the amount in controversy." *Lamb v. State Farm Fire Mut. Auto. Ins. Co.*, 2010 WL 6790539, at *2 (M.D. Fla. Nov. 5, 2010). To the contrary, an unadorned settlement offer merely "reflect[s] puffing and posturing, and such a settlement offer is entitled to little weight in measuring the preponderance of the evidence." *Jackson v. Select Portfolio Serv., Inc.*, 651 F. Supp. 2d 1279, 1281 (S.D. Ala. 2009). Only a settlement offer that provides "specific information to support the plaintiff's claim for damages" constitutes an appropriate indication of the damages in question. *Lamb*, 2010 WL 6790539, at *2.

In *Lamb*, the court concluded that a settlement offer that "fails to explain how [the plaintiff] arrived at her damages calculation" does not "establish that the amount in controversy exceeded $75,000." *Id.* By contrast, in *Wilson*, this Court determined that a settlement offer that "delineates the extent of [the plaintiff's] injuries, the physicians who have treated her, and the medical care she received from each of those physicians"—and which includes a claim of "$100,000 in medical

4

expenses and estimates [that] future medical expenses will be over $1 million"—provided sufficient "detail" to surpass the amount in controversy threshold. *Wilson v. Target Corp.*, 2010 WL 3632794, at *4 (S.D. Fla. Sept. 14, 2010).

Burlington has submitted absolutely no evidence to support its claim that Orenstein is seeking more than $75,000. As a preliminary matter, the Complaint itself does not help Burlington because it alleges only that Orenstein's damages exceed $30,000. Compl. ¶ 1. Instead, Burlington relies on Orenstein's pre-suit demand letter and on the medical records Orenstein attached to it. *See* Notice ¶¶ 4, 7.

According to Burlington, Orenstein has demanded "many times" more than $75,000. *See* Notice ¶ 4. But the letter in which this demand was (apparently) made appears nowhere in the record. *See* Notice of Removal; Response to Motion to Remand [ECF No. 18]. For whatever reason, in other words, Burlington elected not to attach the letter to either its Notice of Removal *or* its Response. In any event, Burlington never says exactly how much money Orenstein demanded and does not explain how the demand computed Orenstein's damages. *See* Notice of Removal; *see also* Response to Motion to Remand. Burlington's conclusory—and wholly unsupported—allegations that the letter satisfies the amount-in-controversy requirement thus prove even less than the unsubstantiated letter at issue in *Lamb*. There is, after all, no evidence— one way or the other—by which the Court can determine whether, on the one hand, Orenstein's demand approximated the level of detail this Court found sufficient in *Wilson*, or whether, on the other, the letter constitutes the kind of "puffing" the court disregarded in *Lamb*. And, because it was indisputably Burlington's burden to establish the amount-in-controversy—*see Federated Mut. Ins. Co.*, 329 F.3d at 807—this evidentiary lacuna inures resoundingly to its detriment.[1]

---

[1] Burlington's offer to produce the letter *now*, Resp. at 5, is thus unavailing. It had two

Burlington's reliance on Orenstein's medical records fares no better. *See* Notice ¶ 7. In Burlington's view, the mere fact that Orenstein produced "about 100 pages of medical records" proves that "[she] had undergone extensive treatment" for her injuries. Resp. at 5. That may be so. But Burlington cites no case for the novel proposition that the number of pages in Orenstein's medical bills somehow establishes that those bills amount to more than $75,000. And, in any case, the proposition is belied in this case by the facts: Orenstein's known medical bills total only $11,586.35. *See* Mot. at 6. And, because Orenstein filed her Motion after Burlington submitted its Notice of Removal, her bills were undoubtedly *less* than that "at the time of removal," *Pretka,* 608 F.3d at 751.

Finally, Burlington's reliance on Orenstein's *future* damages fails for two reasons. *See* Notice ¶ 4. *First*, only Orenstein's bills "as of the time of removal" are relevant to the jurisdictional inquiry. *See Pretka*, 608 F.3d at 751. Any future medical bills are thus inapposite here. *Second*, while Orenstein may (one day) recover for her alleged "pain and suffering, disability, inconvenience, scarring and disfigurement, mental anguish, loss of capacity for the enjoyment of life, lost wages, [and] the loss of future earning capacity," Resp. ¶ 7, Burlington has neither alleged how much it believes those damages will be nor submitted any evidence to substantiate its speculation that these damages "clear[ly]" satisfy the jurisdictional minimum, *see id*. ¶ 7.

\*\*\*

The damages in this case are nothing if not uncertain—and the Court must resolve that uncertainty "in favor of remand." *Univ of S. Ala.*, 168 F.3d at 411.

The Court therefore **ORDERS and ADJUDGES** that this case is **REMANDED** to the

---

opportunities to substantiate its claim—the Notice of Removal and its Response to Orenstein's Motion—and chose not to. It is now too late.

17th Judicial Circuit Court in and for Broward County, Florida. The Clerk of Court is directed to **CLOSE** this case. Any pending deadlines and hearings are **TERMINATED**. All other pending motions are **DENIED as moot**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 26th day of June 2020.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record